**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFF THORNE, individually and on behalf of all other similarly situated,** | : | **Civil Action No.: 2:25-cv-01650** |
| ***Plaintiff,*** | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| **PANDA RESTAURANT GROUP, INC.; PANDA EXPRESS, INC.; ANDREW J.C. CHERNG; and PEGGY TSIANG CHERNG, both jointly and severally,** | : | |
| ***Defendants.*** | : | |

## CLASS ACTION COMPLAINT

AND NOW come the Plaintiff, Jeff Thorne (hereinafter, "Plaintiff"), on behalf of himself and all others similarly situated, by and through their attorneys, specifically Justin M. Bahorich, Esq., Joshua P. Ward, Esq., Alexander C. DiBucci, Esq., and file this Class Action Complaint, alleging as follows:

1. Plaintiff Jeff Thorne (referred to herein as "Plaintiff") on behalf of himself and all other similarly situated employees brings the instant class and collective action seeking to recover unpaid wages, overtime compensation, and other relief arising from Defendants' uniform and unlawful pay practices. Defendants promised employees enhanced compensation through a written policy guaranteeing double pay for extended shifts but failed to honor that promise, underpaying thousands of workers across the United States and Pennsylvania.

## SUMMARY OF CLAIMS

2. The instant action challenges Panda Restaurant Group's nationwide pay practices, which promised employees enhanced compensation but systematically failed to deliver it. In

March 2025, Panda issued a new Employee Handbook guaranteeing non-exempt workers double their regular rate of pay for shifts exceeding twelve (12) hours per day or eight (8) hours on a seventh consecutive workday. Despite this written promise, Panda never applied the "double regular rate" and also failed to include those higher-rate earnings when calculating overtime pay, resulting in widespread underpayment of wages in violation of the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment and Collection Law ("WPCL"). Panda's conduct further constitutes breach of contract, unjust enrichment, and a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act ("RICO") through the dissemination of false and misleading payroll and policy communications. Plaintiff Jeff Thorne brings this action on behalf of all similarly situated employees to recover unpaid wages, liquidated and treble damages, restitution, and other relief available under federal and state law.

## PARTIES

3. Plaintiff, Jeff Thorne, is an adult individual and a citizen of the Commonwealth of Pennsylvania and resides in Allegheny County, Pennsylvania.

4. Defendant, Panda Restaurant Group, Inc. (hereinafter "Panda Group"), is a California corporation with its principal place of business located at 1683 Walnut Grove Avenue, Rosemead, CA 91770. Panda Restaurant Group, Inc. was founded by Andrew Cherng and Peggy Cherng, and is the parent company of Panda Inn, Panda Express, and Hibachi-San. Panda Group operates all its restaurants with the exception of select locations and issues a handbook common to all the restaurants it operates.

5. Defendant, Panda Express, Inc. (hereinafter "Panda Express"), is a California corporation with its principal place of business located at 1683 Walnut Grove Avenue, Rosemead,

CA 91770. Panda Express is a wholly owned subsidiary of Panda Group and has over 2,000 restaurant locations across the United States.

6. Defendant, Andrew Jin-Chan Cherng (hereinafter "Mr. Cherng"), is an adult individual who upon information and belief resides in California. Mr. Cherng is a co-owner of Panda Group and all of its subsidiaries.

7. Defendant, Peggy Tsiang Cherng (hereinafter "Mrs. Cherng"), is an adult individual who upon information and belief resides in California. Mrs. Cherng is co-owner of Panda Group and all of its subsidiaries.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

9. This Court also has original diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Plaintiff and many members of the Class are citizens of different states than Defendants, the amount in controversy in this action exceeds $5,000,000, and there are more than 100 members in the proposed Class.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district.

**FACTUAL ALLEGATIONS**

11. Panda Group owns and operates Panda Express restaurants throughout the United States, including multiple locations within the Commonwealth of Pennsylvania.

12. Panda Group maintains centralized control over the policies, compensation structures, and payroll practices of all Panda Express locations.

13. Mr. Thorne has been employed by Panda Express since approximately September 2021, when he was initially hired as a Kitchen Helper at Panda Express store number 2767, located in Monroeville, Pennsylvania.

14. Plaintiff is currently employed as a Manager at Panda Express store number 2536, located on Lebanon Church Road in Pittsburgh, Pennsylvania.

15. At all relevant times, Mr. Thorne has been a non-exempt employee under the FLSA and PMWA, eligible to receive overtime compensation for hours worked over forty (40) per week.

**a. <u>Defendants implemented a new policy which created a dual-rate system of compensation.</u>**

16. In or around March 2025, Defendants required all employees, including Mr. Thorne, to electronically acknowledge and "click-to-sign" a new employment agreement and to review and sign an updated Employee Handbook through Panda Group's online Human Resources platform.

17. The updated Employee Handbook became effective March 31, 2025.

18. Among other revisions, the new handbook contained an updated overtime policy stating:

> Non-exempt associates will be paid one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in any workweek, for all hours worked in excess of eight hours up to and including 12 hours in any workday and for the first eight hours worked on the seventh consecutive day of work in a workweek. Additionally, associates will be paid double their regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight hours on the seventh consecutive day of work in a workweek.

19. This policy establishes two distinct hourly rates for employees, creating a multi-tiered compensation system:

a. **Regular Rate:** applies to all hours worked up to and including eight (8) hours in a workday.

b. **Double Regular Rate:** applies to all hours worked over twelve (12) in a single workday and to any hours worked over eight (8) on the seventh consecutive day of a workweek.

20. The "double regular rate," as written in the handbook, is two times (2x) the employee's regular rate of pay. For example, Mr. Thorne's regular rate of pay was $24.32, meaning his double regular rate was $48.64 per hour.

**b. Defendants failed to compensate their employees for the double regular rate.**

21. Despite the clear language of the handbook and the company's written commitment to pay an excess rate, Defendants failed to pay Mr. Thorne and other similarly situated employees the promised double regular rate.

22. Mr. Thorne has routinely worked shifts exceeding twelve hours since the policy took effect on March 31, 2025.

23. Mr. Thorne has routinely worked shifts exceeding eight hours on the seventh consecutive day of a workweek.

24. For those shifts, Defendants failed to compensate Mr. Thorne and similarly situated class members at the contractually promised "double regular rate" of pay.

**c. Defendants failed to compensate their employees for overtime based in the weighted average of all earnings.**

25. Under the FLSA and PMWA, when an employee works at more than one rate of pay during a workweek—such as the "regular" and "double regular" rates established by Defendants—the employer must calculate the employee's regular rate as the weighted average of all earnings for that week divided by the total number of hours worked. 29 C.F.R. § 778.115.

26. Defendants failed to include earnings at the higher "double regular rate" in calculating the weighted average of all earnings, thereby understating the regular rate and underpaying overtime compensation due for hours worked in excess of forty.

27. Upon information and belief, Defendants' failure to pay the promised "double regular rate" and to properly calculate overtime based on the weighted average of all earnings was not limited to Mr. Thorne, but was the product of a uniform, company-wide policy or practice affecting employees at every Panda Express location throughout Pennsylvania and across the United States.

**d. <u>Defendants have failed to cure the error after notice by Mr. Thorne.</u>**

28. After discovering the underpayment of wages, Mr. Thorne contacted Defendants' HR and Payroll departments to report the issue and request correction of his pay.

29. Mr. Thorne also sent an email to his superiors attaching a copy of the applicable handbook policy, seeking confirmation that the excess rate policy was in effect and applicable to his hours worked.

30. Despite Mr. Thorne's repeated notices, Defendants failed to provide any response or pay the "double regular rate" or include that rate in the weighted average of all weekly earnings.

31. Defendants' conduct constitutes a willful refusal to pay wages and overtime compensation owed under federal and Pennsylvania law and under Defendants' own written employment policies.

32. Defendants' failure to pay the "double regular rate" as promised also violates the Pennsylvania Wage Payment and Collection Law, which requires employers to pay all wages contractually owed to employees.

33. As a result of Defendants' uniform failure to pay the "double regular rate" and to properly calculate overtime based on the weighted average of all earnings, Mr. Thorne and all similarly situated employees have suffered substantial wage losses and are entitled to recover unpaid wages, liquidated damages, and all other remedies available under the law.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action on behalf of himself and the FLSA Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). Plaintiff also brings this action on behalf of himself and the Commonwealth of Pennsylvania Class as a class action pursuant to Federal Rules of Civil Procedure 23 for claims under Pennsylvania state laws:

### I. FLSA Collective Class

**Weighted–Average Overtime Collective (Nationwide):**

> All current and former non-exempt employees of Panda Restaurant Group, Inc. and/or Panda Express, Inc., in the United States who, at any time since March 31, 2025, were compensated under more than one hourly rate of pay within the same workweek, including but not limited to a "regular rate" and a higher-tier rate described in Defendants' March 2025 Employee Handbook. This class seeks relief under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., for unpaid overtime based on Defendants' uniform method of calculating overtime compensation.

### II. Nationwide Rule 23 Classes

**a. Breach of Contract Class (Nationwide):**

> All current and former non-exempt employees of Panda Restaurant Group, Inc. and/or Panda Express, Inc., in the United States who, at any time since March 31, 2025, were subject to the March 2025 Employee Handbook or any substantially identical written policy issued by Defendants that specified premium or "double regular rate" pay for hours exceeding twelve (12) per workday or eight (8) on a seventh consecutive workday. This class seeks relief for breach of contract under applicable state laws based on Defendants' failure to adhere to those written pay terms.

**b. RICO Class (Nationwide):**

> All current and former non-exempt employees of Panda Restaurant Group, Inc. and/or Panda Express, Inc., in the United States who, at any time since March 31, 2025: (i)

Were issued, acknowledged, or required to sign the March 2025 Employee Handbook or a substantially identical policy regarding premium pay; and (ii) Received wage statements, payroll records, or other electronic or mailed communications generated through Defendants' payroll or HR systems relating to compensation. This class seeks relief under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), based on Defendants' pattern of mail and wire communications concerning employee compensation.

**III. Commonwealth of Pennsylvania Subclasses**

**a. Pennsylvania Weighted–Average Overtime Subclass:**

All current and former non-exempt employees of Panda Restaurant Group, Inc. and/or Panda Express, Inc., who, at any time since March 31, 2025, were employed within the Commonwealth of Pennsylvania, were compensated under more than one hourly rate of pay within a single workweek, including but not limited to a "regular rate" and a "double regular rate" as described in Defendants' March 2025 Employee Handbook, and who worked more than forty (40) hours in at least one such workweek during their employment. This subclass asserts claims under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101 et seq., and its implementing regulations, alleging that Defendants' common pay practices and centralized payroll calculations failed to compute overtime using the weighted-average regular rate required by Pennsylvania law.

**b. Pennsylvania Double Regular Rate Subclass:**

All current and former non-exempt employees of Panda Restaurant Group, Inc. and/or Panda Express, Inc., who were employed within the Commonwealth of Pennsylvania at any time since March 31, 2025, and who worked more than twelve (12) hours in a single workday or more than eight (8) hours on a seventh consecutive day of a workweek while subject to Defendants' March 2025 Employee Handbook or substantially similar written pay policy. This subclass seeks relief for unpaid contractual wages under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 et seq.

c. **Pennsylvania Breach of Contract Subclass:**

All current and former non-exempt employees of Panda Restaurant Group, Inc. and/or Panda Express, Inc., who, at any time since March 31, 2025, were employed within the Commonwealth of Pennsylvania and were subject to the March 2025 Employee Handbook or any substantially identical written policy issued by Defendants that promised premium or "double regular rate" pay for hours worked in excess of twelve (12) per workday or eight (8) on a seventh consecutive workday. This subclass seeks relief for breach of contract under Pennsylvania law based on Defendants' uniform failure to pay the contractually promised "double regular rate" wages for qualifying hours as set forth in their written compensation policies.

35. The claims under the FLSA may be pursued by those who opt-on to this case pursuant to 29 U.S.C. § 216(b).

36. By contrast, the claims brought under Pennsylvania laws may be pursued by all similarly situated persons who do not opt out of the Commonwealth of Pennsylvania Class pursuant to Fed. R. Civ. P. 23.

37. The Classes expressly exclude Defendants, any entities in which Defendants have a controlling interest, Defendants' affiliates and subsidiaries, their legal representatives, officers, directors, successors, and assigns, as well as any judge to whom this action is assigned, and their immediate family members.

38. Plaintiff reserves the right to expand, limit, modify, or amend the Collective/Classes' definitions, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based on, among other things, changing circumstances and new facts obtained during discovery.

39. This action has been brought, and may properly be maintained, as a collective action or class action pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 because of a well-defined public interest in this litigation:

40. **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. Upon information and belief, the members of Collective/Class are so numerous that individual joinder of all class members is impracticable because there are thousands of persons that Defendants have failed to compensate at the "double regular rate" and for overtime using the weighted average rate.

41. The identities of all class members are readily ascertainable from the records of Defendants.

42. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2)**

**and 23(b)(3).** This action involves questions of law and fact that are common to the class members and predominate over questions affecting only individual Collective/Class Members. Such common questions include, but are not limited to:

a. Whether Defendants adopted and disseminated a uniform written pay policy, specifically, the March 2025 Employee Handbook, that established two distinct rates of pay ("regular" and "double regular") for all non-exempt employees nationwide.

b. Whether Defendants uniformly failed to pay the promised "double regular rate" for hours worked in excess of twelve (12) per workday or eight (8) on the seventh consecutive day of a workweek.

c. Whether Defendants' centralized payroll and timekeeping systems, including their electronic HR platform, applied a single algorithm or rule for calculating overtime that excluded hours compensated, or that should have been compensated, at the double regular rate.

d. Whether, by omitting higher-rate earnings from the overtime calculation, Defendants systematically understated employees' "regular rate of pay" in violation of 29 U.S.C. § 207(a) and 29 C.F.R. §§ 778.111 and 778.115.

e. Whether Defendants' failure to pay the double regular rate as promised constitutes a breach of contractual wage obligations enforceable under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.3.

f. Whether Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a) and 43 P.S. § 333.113, thereby extending the applicable statute of limitations and entitling employees to liquidated damages.

g. Whether the determination of unpaid wages, overtime premiums, liquidated damages, statutory penalties, and attorneys' fees can be made through a common formula derived from Defendants' payroll and timekeeping data.

h. Whether declaratory and injunctive relief should issue to prohibit Defendants from continuing to calculate overtime in a manner inconsistent with the FLSA, PMWA, and WPCL.

i. Whether Defendants engaged in a pattern of racketeering activity, consisting of repeated acts of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, by transmitting handbooks, payroll statements, and electronic communications that misrepresented or concealed Defendants' failure to pay the "double regular rate."

j. Whether such predicate acts of mail and wire fraud were executed through standardized, company-wide systems and communications affecting all members of the Class.

43. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The Plaintiff's claims are typical of the other Collective/Class members' claims because, among other things, all class members were comparably injured. The Plaintiff and all members of the Plaintiff's Collective/Class have claims that arise from the same standardized practices and uniform course of conduct by Defendants, including: (i) failure to pay the "double regular rate" promised in the handbook for qualifying hours in excess of twelve (12) per workday or eight (8) on the seventh consecutive day of a workweek; and (ii) failure to calculate overtime compensation based on the weighted-average regular rate that incorporates both "regular-rate" and "double-regular-rate" earnings, as required by 29 C.F.R. § 778.115.

44. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Collective/Class because his interests do not conflict with the interests of the other class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the classes will not be harmed. Furthermore, the interests of the class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

45. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative collective/class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated employees, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

46. **Superiority − Federal Rule of Civil Procedure 23(b)(3).** A collective/class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Collective/Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for

Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the collective/class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

47. **Ascertainability** – all members of the proposed class are ascertainable. Defendants have access to Class Members' names and addresses affected by the Defendants' wrongful conduct described herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA")
### FAILURE TO PAY OVERTIME
### 29 U.S.C. § 201, et seq.

*(On Behalf of Plaintiff and the Nationwide Weighted-Average Rate Overtime Collective Class v. All Defendants)*
*Jointly and Severally*

48. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

49. At all relevant times, Defendants were "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

50. At all relevant times, Plaintiff and members of the Weighted-Average Rate Overtime Class were non-exempt "employees" entitled to overtime compensation under 29 U.S.C. § 207(a).

51. Defendants employed Plaintiff and other similarly situated employees in a single workweek at multiple rates of pay—specifically, at a "regular rate" and at a "double regular rate" as defined in Defendants' March 2025 Employee Handbook.

52. Pursuant to 29 C.F.R. § 778.115, when an employee works at more than one rate during a workweek, the regular rate must be determined as the weighted average of all earnings for the week divided by the total hours worked.

53. Defendants failed to include earnings at the higher "double regular rate" in calculating the weighted average of employees' regular rate of pay, thereby understating the regular rate and underpaying overtime compensation owed for hours worked in excess of forty (40) per week.

54. Defendants' conduct violated 29 U.S.C. § 207(a) and the applicable Department of Labor regulations, including 29 C.F.R. §§ 778.111 and 778.115.

55. The actions of Defendants were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff. The imposition of liquidated damages is warranted.

56. As a direct and proximate result of the aforementioned conduct, Plaintiff and the collective class members suffered actual damages, including, but not limited to, lost wages and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide Weighted-Average Rate Overtime Collective Class, requests judgment in his favor and against Defendants Panda Restaurant Group, Inc.; Panda Express, Inc.; Andrew J.C. Cherng; and Peggy Tsiang Cherng, jointly and severally, for compensatory damages, unpaid overtime wages, liquidated damages pursuant to 29 U.S.C. § 216(b), prejudgment and post-judgment interest, reasonable attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

**COUNT II**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**
**18 U.S.C. § 1962(c)**

*((On Behalf of Plaintiff and All Others Similarly Situated v. Defendants Panda Restaurant Group, Inc. and Panda Express, Inc.)*
*Jointly and Severally*

57. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

58. Plaintiff brings this Count against all Defendants for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).

59. Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

60. Each Defendant is a "person" under 18 U.S.C. § 1961(3). The association-in-fact described herein constitutes an "enterprise" under 18 U.S.C. § 1961(4), referred to as the "Panda Enterprise." The Panda Enterprise consists of Panda Restaurant Group, Inc., Panda Express, Inc., their HR and payroll divisions, and their senior corporate officers, including Andrew Cherng and Peggy Cherng, who directed and benefited from the enterprise's affairs.

61. The Panda Enterprise is an ongoing organization with a formal hierarchy and shared purpose: to maximize corporate profits by reducing labor costs through the systemic underpayment of wages owed under written compensation policies and applicable wage laws.

62. The Panda Enterprise functions as a continuing unit. The same payroll and HR departments implement uniform pay practices across hundreds of restaurant locations nationwide,

using centralized electronic systems and communications transmitted through interstate mail and wire.

63. The Panda Enterprise affects interstate commerce because it operates restaurants in multiple states, transmits payroll and HR data across state lines, and processes wage payments and electronic communications through interstate banking and data networks.

64. Defendants conducted and participated in the Enterprise's affairs through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1) and (5), consisting of multiple related acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

65. The predicate acts of mail and wire fraud include, without limitation, the following enumerated predicate series set out in Plaintiff's complaint:

a. Disseminating the March 2025 Employee Handbook nationwide via email, digital signature portals, and interstate data systems, representing that all non-exempt employees would be paid double their regular rate for qualifying hours in excess of twelve (12) per day or eight (8) on the seventh consecutive day of a workweek;

b. Transmitting electronic payroll statements, wage summaries, and HR communications via the internet and email that falsely represented employees' pay as being consistent with company policy and applicable law, when in fact the "double regular rate" was never applied;

c. Using interstate wires to process payroll through corporate servers in California, thereby concealing material facts about how overtime rates were calculated and misrepresenting that employees were fully compensated for all hours worked; and

d. Mailing or electronically transmitting wage statements, W-2 forms, and other payroll documentation that affirmatively omitted the double-rate earnings to which employees were contractually entitled, thereby reinforcing the false appearance of compliance.

66. Defendants knowingly and intentionally devised and participated in this scheme to defraud employees by falsely representing that they would be paid at the rates set forth in the March 2025 Employee Handbook and by concealing their actual non-payment of those rates.

67. The scheme relied on interstate mail and wire communications as essential components of its operation: handbook distribution, digital onboarding, payroll transmission, and electronic deposit notifications were all conducted electronically across state lines.

68. The predicate acts are related because they share a common purpose (the underpayment of wages and concealment of that underpayment), a common method (false and misleading interstate communications), and common participants (the same corporate entities and officers).

69. The predicate acts demonstrate both closed-ended continuity (repeated over multiple months since March 2025) and open-ended continuity (representing Defendants' regular business practice), satisfying 18 U.S.C. § 1961(5).

70. Each Defendant conducted and participated, directly or indirectly, in the conduct of the Panda Enterprise's affairs by formulating, approving, and executing uniform compensation policies and directing the transmission of false or misleading payroll and handbook communications through interstate mail and wire.

71. The Cherng Defendants exercised control and oversight over Panda's HR and payroll divisions, approved the pay practices at issue, and thereby participated in the operation and management of the Panda Enterprise.

72. The predicate acts described herein constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), as they amount to or pose a threat of continued unlawful conduct.

73. As a direct and proximate result of Defendants' pattern of racketeering activity, Plaintiff and members of the Class suffered injury to their property within the meaning of 18 U.S.C. § 1964(c), including: (i) Loss of contractually and statutorily owed wages and overtime compensation; (ii) Economic harm in the form of reduced earnings and devaluation of labor; and (iii) Associated consequential losses arising from Defendants' fraudulent scheme.

74. The injuries to Plaintiff and the Class were the direct and foreseeable result of Defendants' fraudulent scheme and not derivative or remote. Defendants' racketeering acts directly caused the wage underpayments complained of herein.

75. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages, costs of suit, and reasonable attorneys' fees.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Defendants Panda Restaurant Group, Inc. and Panda Express, Inc., jointly and severally, and award actual damages, treble damages pursuant to 18 U.S.C. § 1964(c), reasonable attorneys' fees and costs of suit, pre- and post-judgment interest as allowed by law, and such other and further relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1962(d) – RICO CONSPIRACY

*(On Behalf of Plaintiff and All Others Similarly Situated v. Defendants Andrew J.C. Cherng and Peggy Tsiang Cherng)*
*Jointly and Severally*

76. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

77. Section 1962(d) of the Racketeer Influenced and Corrupt Organizations Act makes it unlawful for any person to conspire to violate any provision of § 1962(a), (b), or (c).

78. Defendants Andrew J.C. Cherng and Peggy Tsiang Cherng ("the Cherng Defendants") were founders, owners, and senior corporate officers of Panda Restaurant Group, Inc. and Panda Express, Inc. (collectively, the "Panda Enterprise"). Through their positions of authority, they exercised oversight and control over the company's payroll, human-resources, and compensation systems.

79. At all relevant times, the Cherng Defendants were aware of, approved, and benefited from the corporate policies and practices that constitute the racketeering activity alleged in Count VIII, including the nationwide dissemination of handbooks, pay statements, and electronic communications falsely representing compliance with the company's own pay policies and with applicable wage laws.

80. The Cherng Defendants knowingly and willfully agreed and intended that the Panda Enterprise would be conducted through a pattern of racketeering activity—specifically, through repeated acts of mail fraud and wire fraud as described herein—by authorizing, directing, or acquiescing in the continued use of centralized payroll and HR systems that generated and transmitted such fraudulent communications.

81. The Cherng Defendants' agreement and participation were motivated by their ownership interests and by the direct financial benefit they derived from the enterprise's reduction of labor costs and inflation of reported profits.

82. It is not necessary for each conspirator to have personally committed two predicate acts of racketeering; it is sufficient that the Cherng Defendants knowingly agreed to facilitate a scheme that, if completed, would violate 18 U.S.C. § 1962(c).

83. As a direct and proximate result of the Cherng Defendants' agreement and participation in the RICO conspiracy, Plaintiff and the members of the proposed Class suffered injury to their property within the meaning of 18 U.S.C. § 1964(c), including lost wages, diminished earnings, and other economic harm described herein.

WHEREFORE**,** Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Defendants Andrew J.C. Cherng and Peggy Tsiang Cherng, jointly and severally, and award actual damages, treble damages pursuant to 18 U.S.C. § 1964(c), reasonable attorneys' fees and costs of suit, pre- and post-judgment interest as allowed by law, and such other and further relief as the Court deems just and proper.

## COUNT IV
## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1962(a) – USE OR INVESTMENT OF INCOME DERIVED FROM RACKETEERING ACTIVITY

*(On Behalf of Plaintiff and All Others Similarly Situated v. Defendants Andrew J.C. Cherng and Peggy Tsiang Cherng)*
*Jointly and Severally*

84. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

85. Section 1962(a) of the Racketeer Influenced and Corrupt Organizations Act makes it unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the establishment or operation of any enterprise engaged in interstate or foreign commerce.

86. At all relevant times, Defendants Andrew J.C. Cherng and Peggy Tsiang Cherng ("the Cherng Defendants") were founders, owners, and senior officers of Panda Restaurant Group, Inc. and Panda Express, Inc., and they received substantial financial income, dividends, and profit distributions derived from the racketeering activity alleged in this Complaint, including the systematic underpayment of wages and falsification of payroll communications described hereinabove.

87. The Cherng Defendants knowingly used and reinvested those unlawfully obtained proceeds into the ongoing operations, capitalization, and expansion of the Panda Enterprise, including the funding of new restaurant openings, corporate infrastructure, payroll platforms, and marketing systems designed to perpetuate and conceal the unlawful pay practices at issue.

88. By directing, authorizing, or approving the reinvestment of racketeering income into the Panda Enterprise, the Cherng Defendants furthered and perpetuated the enterprise's existence, growth, and ability to continue the predicate acts of mail and wire fraud described above.

89. The injuries suffered by Plaintiff and the Class—lost wages, diminished earnings, and the continuing underpayment of lawful compensation—were directly and proximately caused by the Cherng Defendants' use and investment of racketeering income in the Panda Enterprise, which enabled the continuation and expansion of the wage-suppression scheme nationwide.

90. The Cherng Defendants' conduct constitutes a knowing and willful violation of 18 U.S.C. § 1962(a).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Defendants Andrew J.C. Cherng and Peggy Tsiang Cherng, jointly and severally, and award actual damages, treble damages pursuant to 18 U.S.C. § 1964(c), reasonable attorneys' fees and costs of suit, pre- and post-judgment interest as allowed by law, and such other and further relief as the Court deems just and proper.

**COUNT V**
**VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT ("PMWA")**
**43 P.S. § 333.101, et seq.**

*(On Behalf of Plaintiff and the Pennsylvania Weighted-Average Rate Overtime Subclass v. All Defendants)*
*Jointly and Severally*

91. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

92. The PWMA states that overtime pay is required "for hours in excess of forty hours in a workweek. 43 Pa. Stat. Ann. §333.104(c). Further, the PMWA requires the same time and a half payment for "all hours worked past 40 in a week." *Ellis v. Edward D. Jones & Co., L.P.,* 527 F. Supp. 2d 439, 452 (W.D. Pa. 2007) (citing 29 U.S.C.S. 207(a), 43 Pa. Stat. Ann. 333.104(c)).

93. Because the PMWA "substantially parallels" the FLSA, this Court should look to the federal courts' interpretation of the FLSA when analyzing claims under the PMWA. *Philadelphia Metal Trades Council v. Konnerud Consulting W.*, A.S., No. CV 15-5621, 2016 WL 1086709, at *5 (E.D. Pa. Mar. 21, 2016) (citing *Ford-Greene*, 106 F. Supp. 3d at 610– 13 (applying

the Third Circuit's analysis in Davis to the plaintiff's claims under both the FLSA and PMWA).

94. Thus, "plaintiff-employees asserting PMWA violations must substantiate their claims by demonstrating that they performed work for which they were not paid . . . and that the defendant-employer had actual or constructive knowledge of the plaintiff's overtime work." *Alers v. City of Philadelphia*, 919 F. Supp. 2d at 560.

95. Under 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41, non-exempt employees are entitled to overtime compensation at a rate not less than one and one-half times their regular rate for all hours worked in excess of forty (40) per workweek.

96. The PMWA adopts the FLSA's definition of "regular rate," requiring inclusion of all remuneration earned at multiple rates of pay within the same workweek.

97. Defendants failed to pay Plaintiff and the Subclass overtime compensation calculated on the proper weighted-average regular rate, in violation of the PMWA.

98. As a direct and proximate result of the aforementioned conduct, Plaintiff and the Subclass suffered actual damages, including, but not limited to, lost overtime wages in amounts to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs, other compensation pursuant to the PMWA, and such other legal and equitable relief as the Court deems just and proper.

99. The actions of Defendants were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff. The imposition of liquidated damages is warranted.

WHEREFORE, Plaintiff, individually and on behalf of the Pennsylvania Weighted-Average Rate Overtime Subclass, requests judgment in his favor and against Defendants Panda Restaurant Group, Inc.; Panda Express, Inc.; Andrew J.C. Cherng; and Peggy Tsiang Cherng, jointly and severally, for compensatory damages, unpaid overtime wages, liquidated damages,

prejudgment and post-judgment interest, reasonable attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

## COUNT VI
## VIOLATION OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW ("WPCL") 43 P.S. § 260.1 et seq.

*(On Behalf of Plaintiff and the Pennsylvania Double Regular Rate Subclass v. All Defendants) Jointly and Severally*

100. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

101. Under the WPCL, the definition of employer "includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a.

102. The Pennsylvania WPCL, 43 P.S. §260.1 et seq., however, does not provide "a statutory definition of the term 'employee'." *Frank Burns, Inc. v. Interdigital Communs. Corp*, 704 A.2d 678, 680-81 (Pa Super. 1997).

103. Courts in Pennsylvania have held that "any person in Pennsylvania can qualify as an employee under the WPCL," because "grammatically, an 'employee' is an entity that is employed," and "in the definition of employer, the entity employed by the employer, i.e., the employee, is any person in Pennsylvania." *Id*. at 681.

104. The WPCL does not create a right to compensation, but "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Computer Corp*., 696 A.2d 148, 150 (1997), citing *Killian v. McCulloch*, 850

F. Supp. 1239, 1255 (E.D.Pa.1994).

105. As a company conducting business and employing person(s) in the Commonwealth of Pennsylvania, Defendants are "an employer" within the definition of the WPCL 43 Pa. C.S. §260.1a. Plaintiff and the PA Subclass, based on the law cited above, were employees of Defendants working within the Commonwealth of Pennsylvania.

106. Defendants' March 2025 Employee Handbook and associated employment agreements constitute written instruments setting forth the terms and conditions of compensation, including the promise to pay non-exempt employees double their regular rate of pay for hours worked in excess of twelve (12) per workday or eight (8) on the seventh consecutive day of a workweek.

107. Defendants failed to pay those contractually owed "double regular rate" wages to Plaintiff and the Class members in violation of 43 P.S. § 260.3(a).

108. Defendants' failure to pay such wages was willful and without good faith justification.

109. As a direct and proximate result of the aforementioned conduct, Plaintiff and the PA Subclass suffered actual damages, including, but not limited to, wages in amounts to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs, other compensation pursuant to the WPCL, and such other legal and equitable relief as the Court deems just and proper.

110. Pursuant to 43 P.S. § 260.10, Plaintiff and the Class are entitled to recover unpaid wages, liquidated damages of up to twenty-five percent (25%) of the total wages due, reasonable attorneys' fees, and costs.

111. The actions of Defendants were intentional, wanton, willful, and done in reckless indifference to the rights of Plaintiff. The imposition of punitive damages is warranted.

WHEREFORE, Plaintiff, individually and on behalf of the Pennsylvania Double Regular Rate Subclass, requests judgment in his favor and against Defendants Panda Restaurant Group, Inc.; Panda Express, Inc.; Andrew J.C. Cherng; and Peggy Tsiang Cherng, jointly and severally, for compensatory damages, unpaid contractual wages, liquidated damages pursuant to 43 P.S. § 260.10, prejudgment and post-judgment interest, reasonable attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

**COUNT VII**
**BREACH OF CONTRACT**

*(On Behalf of Plaintiff and the Nationwide Breach of Contract Class v. Defendants Panda Restaurant Group, Inc. and Panda Express, Inc.)*
*Jointly and Severally*

112. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

113. Defendants entered into valid and enforceable contracts with Plaintiff and members of the Breach of Contract Class through their uniform employment agreements and the March 2025 Employee Handbook, which expressly promised that non-exempt employees would be paid double their regular rate of pay for hours worked in excess of twelve (12) per workday or eight (8) on the seventh consecutive day of a workweek.

114. Plaintiff and members of the Class performed their contractual obligations by working the hours required by Defendants.

115. Defendants breached these agreements by failing to pay the promised double-rate wages.

116. All conditions precedent to recovery have occurred and been satisfied.

117. Defendants failed to rectify the errors.

118. As a direct and proximate result of Defendants' breaches, Plaintiff and members of the Class have suffered damages including unpaid wages, lost compensation, and all other relief available under state law.

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide Class, requests judgment in his favor and against Defendants Panda Restaurant Group, Inc. and Panda Express, Inc., jointly and severally, for compensatory damages, actual damages, expectation damages, restitution, interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT VIII
## BREACH OF CONTRACT

*(On Behalf of Plaintiff and the Pennsylvania Breach of Contract Subclass v. Defendants Panda Restaurant Group, Inc. and Panda Express, Inc.)*
*Jointly and Severally*

119. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

120. Defendants entered into valid and enforceable contracts with Plaintiff and members of the Breach of Contract Class through their uniform employment agreements and the March 2025 Employee Handbook, which expressly promised that non-exempt employees would be paid double their regular rate of pay for hours worked in excess of twelve (12) per workday or eight (8) on the seventh consecutive day of a workweek.

121. Plaintiff and members of the PA Subclass performed their contractual obligations by working the hours required by Defendants.

122. Defendants breached these agreements by failing to pay the promised double-rate wages.

123. All conditions precedent to recovery have occurred and been satisfied.

124. Defendants failed to rectify the errors.

125. As a direct and proximate result of Defendants' breaches, Plaintiff and members of the PA Subclass have suffered damages including unpaid wages, lost compensation, and all other relief available under Pennsylvania law.

WHEREFORE, Plaintiff, individually and on behalf of the PA Subclass, requests judgment in his favor and against Defendants Panda Restaurant Group, Inc. and Panda Express, Inc., jointly and severally, for compensatory damages, actual damages, expectation damages, restitution, interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT IX
## QUANTUM MERUIT / UNJUST ENRICHMENT

*(On Behalf of Plaintiff and the Nationwide Breach of Contract Class v. Defendants Panda Restaurant Group, Inc. and Panda Express, Inc.)*
*Jointly and Severally*

126. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

127. Plaintiff and the members of the Class had an expectation of payment from Defendants.

128. Plaintiff and members of the Class conferred a benefit upon Defendants.

129. Defendants appreciated the benefit of Plaintiff and members of the Class's time and efforts.

130. It would be manifestly unjust if the Defendants' acceptance and retention of such

benefits were permitted without payment of value to Plaintiff and members of the Class.

131. As a direct and proximate cause of the aforementioned conduct, Plaintiff and members of the Class suffered actual damages, including, but not limited to, wage loss, loss of income and are entitled to reimbursement, restitution and disgorgement from Defendants of the value of the benefits conferred by Plaintiff and members of the Class.

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide Breach of Contract Class, requests judgment in his favor and against Defendants Panda Restaurant Group, Inc. and Panda Express, Inc., jointly and severally, for compensatory damages, restitution, disgorgement, reimbursement of the reasonable value of services rendered, prejudgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**COUNT X**
**QUANTUM MERUIT / UNJUST ENRICHMENT**

*(On Behalf of Plaintiff and the Pennsylvania Breach of Contract Subclass v. Defendants Panda Restaurant Group, Inc. and Panda Express, Inc.)*
*Jointly and Severally*

132. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

133. Plaintiff and the members of the PA Subclass had an expectation of payment from Defendants.

134. Plaintiff and members of the PA Subclass conferred a benefit upon Defendants.

135. Defendants appreciated the benefit of Plaintiff and members of the PA Subclass's time and efforts.

136. It would be manifestly unjust if the Defendants' acceptance and retention of such

benefits were permitted without payment of value to Plaintiff and members of the Class.

137. As a direct and proximate cause of the aforementioned conduct, Plaintiff and members of the Class suffered actual damages, including, but not limited to, wage loss, loss of income and are entitled to reimbursement, restitution and disgorgement from Defendants of the value of the benefits conferred by Plaintiff and members of the Class.

WHEREFORE, Plaintiff, individually and on behalf of the Pennsylvania Breach of Contract Subclass, requests judgment in his favor and against Defendants Panda Restaurant Group, Inc. and Panda Express, Inc., jointly and severally, for compensatory damages, restitution, disgorgement, reimbursement of the reasonable value of services rendered, prejudgment and post-judgment interest, costs of suit, and such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiffs and prospective Class Members hereby demand a trial by jury on all issues so triable in this action.

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: October 20, 2025

By: _*/s/ Justin M. Bahorich*_____

Justin M. Bahorich, Esq.
Pa. I.D. No. 329207
Joshua P. Ward, Esq.
Pa. I.D. No. 320347
Alexander C. DiBucci, Esq.
Pa. I.D. No. 336800

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue, Suite 201
Pittsburgh, PA 15206
*Counsel for Plaintiff and Prospective Class*

Phone: 412-545-3015
Email: jbahorich@jpward.com